**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Chadwick Hamilton Fairbanks,<br>Plaintiff,<br>v.<br>Kristi Noem, *et al.*,<br>Defendants. | No. CV-26-01039-PHX-JJT<br>**ORDER** |

Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 4) and First Amended Motion for Preliminary Injunction (Doc. 24-2) that have been fully briefed. Also pending is Defendant's Motion to Dismiss First Amended Complaint (Doc. 25) that Plaintiff moved to strike (Doc. 31), and that motion to strike has been fully briefed.

## I. BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint and the exhibits submitted with Plaintiff's two motions for preliminary injunction. Plaintiff applied for a criminal investigator position with the United States Immigration and Customs Enforcement, a federal agency within the Department of Homeland Security. (Doc. 21, FAC, ¶ 14.) As a part of his application, Plaintiff submitted to a limited background check and reported that he had no conviction in the preceding seven years. (FAC ¶¶ 20, 25; Doc. 24-2 at 56–57.) Plaintiff did, in fact, have a former conviction, but long before the seven-year timeframe specifically called for in the application. (FAC ¶ 69.)

. . .

On December 15, 2025, Plaintiff received an "official job offer" for the position that was contingent upon a final background check. (FAC ¶¶ 17, 20; Doc. 4 at 18; Doc. 24-2 at 32.) Plaintiff was advised that his appointment was effective December 28, 2025 and he would receive instructions to attend orientation that was scheduled for December 29, 2025. (FAC ¶¶ 17–18; Doc. 4 at 18; Doc. 24-2 at 32.) Plaintiff accepted the job offer. At the time, Plaintiff's final background check was incomplete but he understood the agency's policy to allow for the start of his appointment even before he was cleared but that his duties would be significantly curtailed and "non-sensitive." (FAC ¶ 22; *see* Doc. 24-2 at 36.)

By December 26, 2025, Plaintiff had not received orientation instructions. (FAC ¶ 28.) He contacted the agency for information but heard nothing in return. (FAC ¶ 28; Doc. 24-2 at 44–45.) On December 30, 2025, Plaintiff visited a local agency office and he was informed that "his onboarding had not been properly routed within the local systems." (FAC ¶ 29.) Over the next week, Plaintiff was informed by agency personnel that his entry-on-duty ("EOD") date was "pending clearance." (FAC ¶¶ 30–31; Doc. 4 at 22–30; Doc. 24-2 at 46–51.) By February 9, 2026, Plaintiff had still not received a new EOD date but was still being considered for the position. (Doc. 4 at 32; Doc. 24-2 at 42.) Around this time, the agency notified Plaintiff that it was rescinding a different, earlier "tentative" job offer that, according to Plaintiff, was unrelated to the job offer dated December 15, 2025. (FAC ¶ 34; Doc. 24-2 at 53.)

Plaintiff alleges that the postponement of his EOD created "administrative limbo" and was contrary to the agency's policy of permitting appointees to enter duty, albeit in a more limited "non-sensitive" role, pending the completion of a formal background check. (FAC ¶ 69.) Plaintiff also alleges that his earlier conviction should not have been used as an "automatic" bar to his EOD pursuant to agency regulations. (FAC ¶ 69.) Plaintiff sues under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, and challenges Defendant's postponement of his EOD date and delay in resolving his background clearance on account of his former conviction as arbitrary, capricious and contrary to law. He also asserts that the agency's final resolution of his job application is unlawfully

withheld. (FAC ¶¶ 5, 36, 41, 71.) Alternatively, Plaintiff sues for a writ of mandamus that would compel Defendant to "take final administrative action upon issuance and acceptance of an [o]fficial [j]ob [o]ffer establishing a fixed [EOD] date." (FAC ¶ 59.)

Plaintiff brought this action on February 13, 2026, and contemporaneously filed a Motion for Preliminary Injunction. (Doc. 4.) Plaintiff then filed the operative First Amended Complaint on April 23, 2026 but failed to file a notice and redline version of the amendment as required by Local Rule of Civil Procedure 15.1(b). The Court ordered Plaintiff to file the requisite notice and redline version (Doc. 22). Plaintiff did so and, curiously, also filed a redline version of his original Motion for Preliminary Injunction, calling it a "First Amended Motion for Preliminary Injunction." (Doc. 24-2.)

While procedurally enigmatic, the amended motion is substantively no different than its original version, except that the amended motion "narrowed and refined the requested relief" of the original to a single mandate compelling "coherent and final administrative action with respect to [Plaintiff's job offer] and established EOD posture." (Doc. 24-2 at 21–22.) Defendant has since responded to Plaintiff's original motion (Doc. 28), which the Court considers to be a response to the amended motion in equal measure. Plaintiff lodged an overlength reply (Doc. 30) and moved for leave to file it in excess of the page limit (Doc. 29) without opposition. The Court grants Plaintiff that leave and considers his reply in full along with the original motion for preliminary injunction, amended motion for preliminary injunction, Defendant's response thereto, and all exhibits provided by the parties.

## II. LEGAL STANDARDS

In order to obtain a preliminary injunction, a plaintiff must show that "(1) []he is likely to succeed on the merits, (2) []he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [his] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008)). As a threshold matter, though, "[a] district court may not grant a preliminary injunction if it lacks subject matter

jurisdiction over the claim before it." *Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 842 (D. Alaska 2012), *aff'd*, 709 F.3d 1281 (9th Cir. 2013). Accordingly, the Court must first determine whether it has subject-matter jurisdiction over Plaintiff's claims.

"[B]ecause it involves a court's power to hear a case," subject-matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513–14 (2006). Here, Defendant challenges the Court's subject-matter jurisdiction over Plaintiff's APA claim,[1] arguing that the Civil Service Reform Act ("CSRA") found throughout Title 5 of the United States Code provides the exclusive remedy for that claim. This issue has been fully briefed by the parties and an evidentiary hearing or oral argument as to Plaintiff's original or amended preliminary injunction motion would not assist the Court in determining the scope of its jurisdiction here.

## III. ANALYSIS

The CSRA sets forth "merit system principles" that govern federal agency employment practices. 5 U.S.C. § 2301. Those principles apply to applicants for employment and mandates agencies to provide them "fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights." § 2301(b)(2).

The CSRA also provides a remedial scheme through which an applicant for federal employment can challenge any personnel action, including appointment, that violates any one of the fourteen enumerated "prohibited personnel practices" with respect to certain "covered positions" in a federal agency. § 2302(b). The twelfth enumeration is a catchall that includes violations of "any law, rule or regulation implementing, or directly concerning, the merit system principles," § 2302(b)(12), including the principle calling for

---

[1] As far as the Court can tell from Plaintiff's original and amended motion, he seeks preliminary injunctive relief as to his APA claim only. No party addresses subject-matter jurisdiction as to Plaintiff's mandamus claim.

fair and equitable treatment in all aspects of personnel management, § 2301(b)(2). Under this remedial scheme, an applicant may file a charge with Office of Special Counsel[2] against an agency that treats an application unfairly or inequitably during the appointment process and the Office of Special Counsel will, in turn, investigate that charge and take appropriate action as permitted by the CSRA. §§ 1211–19.

Courts have treated the CSRA's remedial scheme as both exclusive and preemptive of any claims, including those brought under the APA, challenging conduct that falls within the scope of the CSRA. *See United States v. Fausto*, 484 U.S. 439, 448 (1988) ("[W]e think Congress' intention is fairly discernible, and that the presumption favoring judicial review has been overcome by inferences of intent drawn from the statutory scheme [of the CSRA] as a whole." (citation modified)); *Blue v. Widnall*, 162 F.3d 541, 545 (9th Cir. 1998) (affirming dismissal of APA claim because "general judicial review provisions of the APA never confer jurisdiction to review federal personnel actions" under the CSRA); *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984) (same); *Colodney v. Leavitt*, 310 F. App'x 119, 120 (9th Cir. 2009) (same); *Ricci v. Merit Sys. Prot. Bd.*, 953 F.3d 753, 760 (Fed. Cir. 2020) (same); *see also Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999) ("[E]ven if no remedy were available to [the plaintiff] under the CSRA, he still could not bring a[n] action if the acts complained of fell within the CSRA's confines); *Saul v. United States*, 928 F.2d 829, 842 (9th Cir. 1991) (holding that the CSRA preempted state law tort claims).

Here, Defendant maintains that the CSRA deprives this Court of subject-matter jurisdiction over Plaintiff's APA claim because the federal employment application process falls within ambit of the CSRA. (Doc. 28 at 5–6.) Plaintiff disputes that the CSRA governs his claim because, according to him, he challenges only "the reviewable administrative handling" of his application for employment (Doc. 30 at 8–9). Even accepting Plaintiff's framing of his claim, the agency's treatment of Plaintiff's appointment, including the handling of his application, background check, and onboarding, all relate to personnel management generally. That personnel management is squarely

---

[2] The Office of Special Counsel is an entity established by the CSRA. § 1211.

governed by the CSRA and must be implemented in accordance with the merit system principle requiring fair and equitable treatment; the violation of which may result in remedial action by the Office of Special Counsel upon a charge brought by an aggrieved applicant like Plaintiff. The Court agrees with Defendant that Plaintiff's only recourse for challenging that conduct is through the remedial scheme of the CSRA, not under the APA before this Court.

To evade this outcome, Plaintiff contends that the APA nonetheless provides an avenue for the relief he seeks. (Doc. 30 at 8–14.) In support, he argues that Ninth Circuit authority holds "that [agency] discretion does not itself defeat APA review and that district courts err when they constrict APA scrutiny too narrowly," citing *Charley E. Johnson Revocable Living Trust v. United States*, 145 F.4th 1158, 1160 (9th Cir. 2025). The Court is familiar with the Ninth Circuit's holding in *Johnson* as it arises from the undersigned's own order. In *Johnson*, this Court determined that land conveyances governed by the Small Tracts Act were committed to agency discretion by law and were not subject to review under § 701(a)(2) of the APA, and the Ninth Circuit reversed. There, the matter of the appeal "beg[an] and end[ed] with § 701(a)(2)," which imposes a "very narrow exception to the default rule of judicial review." *Id*. at 1162. But here, Defendant does not invoke § 701(a)(2) to bar Plaintiff's APA claim,[3] rendering *Johnson* inapposite. Plaintiff also cites for support *State of Nebraska v. Su*, 121 F.4th 1 (9th Cir. 2024), another case arising from an order issued by the undersigned. There, the Ninth Circuit disagreed with this Court's holding that an agency action carrying out an executive order is not subject to judicial review under the APA. But *Su* is also distinguishable because no executive order is at issue here.

Despite the factual and legal dissimilarities between the two cited cases and the matter at bar, the Court understands Plaintiff's argument to be that his APA claim is reviewable by this Court notwithstanding the CSRA. It is generally true that "courts should

---

[3] In fact, Defendant's only reference to agency discretion relates to whether Plaintiff establishes the "irreparable harm" *Winter* factor (*see* Doc. 28 at 8), but the Court's analysis will not reach that far.

hesitate to disturb the legislative bargain embodied in the APA." *Su*, 121 F.4th at 16. Yet, courts in the Ninth Circuit also accept that the comprehensive nature of the CSRA indicates Congress's intent to channel disputes pertaining to federal employment through the single system of administrative procedures and remedies created therein. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) ("[T]he CSRA's "elaborate" framework . . . indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review."); *Andersen v. United States*, 8 F.3d 25 *5 (9th Cir. 1993) (unpublished table opinion) (affirming lack of subject-matter jurisdiction over an APA claim and collecting cases); *see also Fausto*, 484 U.S. at 448. The overwhelming authority in this Circuit counsels that the APA is no bypass around the CSRA where such claims arise from federal employment practices within the CSRA's scope. Accordingly, the Court agrees with Defendant that it lacks subject-matter jurisdiction to grant the preliminary injunction Plaintiff requests.

As a separate matter, Defendant has also moved to dismiss Plaintiff's claims for lack of subject-matter jurisdiction based on, once again, the CSRA. (Doc. 25.) Defendant's briefing nearly replicates the argument and citations made in their response brief to the preliminary injunction motion. Plaintiff did not respond to that dismissal motion at all; instead, he moved to strike it for Defendant's failure to file a certificate of conferral in violation with this Court's order requiring those certificates. (Doc. 31.) In response, Defendant concedes it did not file a conferral certificate but disputes that it failed to confer with Plaintiff prior to bringing its dismissal motion (Doc. 33 at 1–2.) The Court, however, need not resolve either motion.

It is evident from the pleading and the parties' preliminary injunction briefing that this Court lacks all subject-matter jurisdiction to hear the instant claims before it. The reasons for lack of jurisdiction over the APA claim are set forth extensively above. As for Plaintiff's mandamus claim, the law is well settled that the Mandamus Act—under which Plaintiff's mandamus claim is brought—does not provide an independent source for this Court's jurisdiction. *Starbuck v. City & Cnty. of San Francisco*, 556 F.2d 450, 459 (9th

Cir. 1977) ("That [mandamus] statute does not provide an independent ground for jurisdiction. Since appellants . . . lack sufficient standing to invoke the APA, they cannot avail themselves of the more extraordinary mandamus remedy."). Accordingly, the Court dismisses Plaintiff's claims *sua sponte* for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Having dismissed all Plaintiff's claims, the Court now considers whether it should grant him leave to amend them. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Amendment of these claims would be futile as the caselaw overwhelmingly precludes Plaintiff from challenging Defendant's conduct outside the remedial scheme provided for in the CSRA, and the Mandamus Act provides no independent source for the Court's jurisdiction. This futility alone is enough to deny Plaintiff leave to amend his claims. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

**IT IS ORDERED** granting Plaintiff's Motion for Leave to Exceed Page Limit for Reply in Support of Motion for Preliminary Injunction (Doc. 29). The Clerk of Court is directed to file onto the docket the document lodged at Doc. 30.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Preliminary Injunction (Doc. 4) and First Amended Motion for Preliminary Injunction (Doc. 24-2).

**IT IS FURTHER ORDERED** dismissing *sua sponte* Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief (Doc. 21) without leave to amend.

**IT IS FURTHER ORDERED** denying as moot Defendant's Motion to Dismiss First Amended Complaint (Doc. 25).

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion to Strike Defendant's Motion to Dismiss First Amended Complaint (Doc. 31).

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this matter.

Dated this 3rd day of September, 2026.

Honorable John J. Tuchi
United States District Judge